IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK SCHNATZMEYER and     §
CAROLE SANDLIN,     §
    §
     Plaintiffs,     §
    §
v.     §     Civ. Action No. 3:23-CV-02820-K
    §
STATE FARM INSURANCE     §
COMPANY,     §
    §
     Defendant.     §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant State Farm Lloyds's ("State Farm") Motion for Partial Summary Judgment (the "Motion")(Doc. No. 29), supported by Defendant's Brief in Support of its Motion for Partial Summary Judgment ("State Farm's Brief")(Doc. No. 30) and Defendant's Appendix in Support of its Motion for Summary Judgment ("State Farm's Appendix")(Doc. No. 31). In opposition, Plaintiffs Mark Schnatzmeyer and Carole Sandlin filed Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs" or "Mr. Schnatzmeyer and Ms. Sandlin's" Response)(Doc. No. 44), accompanied by Plaintiffs' Brief Opposition of Defendant's Motion for Partial Summary Judgment ("Plaintiffs' Brief")(Doc. No. 44-1) and Plaintiffs' Appendix in Support of their Response to Defendant's Motion for Partial Summary Judgment ("Plaintiffs' Appendix")(Doc. Nos. 44-2 and 44-3). State Farm filed Defendant's Reply Brief in Support of its Motion for Partial Summary Judgment ("State Farm's Reply")(Doc. No. 59) and the Motion is ripe to decide. For

the reasons below, the Court finds that the Plaintiffs have failed to establish a genuine dispute of material fact relating to Plaintiffs' breach of contract claims for their 2021 claim and some of their 2022 claim (e.g., relating to Coverage A and B), Prompt Payment Act claims relating to the forgoing, as well as Plaintiffs' bad faith, misrepresentation, fraud and conspiracy claims.  Accordingly, the Court **GRANTS** in part and **DENIES** in part State Farm's Motion for Partial Summary Judgment.

## I.     BACKGROUND

The Plaintiffs own a property in Dallas which they insured with State Farm under policy 84-E8-U906-8 (the "Policy").  Doc. No. 1-3 at 33, ¶¶4.1-5.2.  The Plaintiffs experienced freeze losses in 2021 and 2022 and, unsatisfied with State Farm's handling of their claims, brought the present suit in state court, which State Farm removed.  *Id*. at 33-46;  Doc. No. 1 at 1.

On February 17, 2021, the Plaintiffs' property suffered water damage when a neighbor's pipe burst during a winter freeze.  Doc. No. 1-3 at 33-34, ¶5.3.  The Plaintiffs reported their loss to State Farm, which assigned it claim number 43-16N7-08N (the "2021 claim").  *Id*. at ¶¶5.3-5.4.  State Farm assigned an adjuster, who met with Mr. Schnatzmeyer and inspected the Plaintiffs' property on March 1, 2021.  Doc. No. 31-1 at 19-20.  On March 12, 2021, State Farm issued an estimate for Plaintiffs' 2021 claim and paid $4,261.52 to settle that claim. *Id*. at 25-43.  State Farm's payment included $2,956.38 for emergency water mitigation and $1,305.14 for the actual cash value of necessary repairs, after applying the Plaintiffs' deductible, and authorized an additional $433.83 in replacement cost benefits pursuant to the Policy's terms.  *Id*. at

27-28.  After issuing the estimate and payment, State Farm's adjuster also reportedly spoke with Mr. Schnatzmeyer and requested he send "receipts for repairs as soon as completed to claim his [replacement cost benefit]" and "complete the content sheet" relating to any personal property losses "as soon as he can." *Id*. at 17.  State Farm then closed the Plaintiffs' claim.  *Id*.  For the next twenty-one months, State Farm heard nothing further from the Plaintiffs.  *Id*.

On December 24, 2022, the Plaintiffs suffered a second water loss, again a result of a winter freeze.  Doc. No. 1-3 at 34, ¶5.7.  The Plaintiffs reported this new loss to State Farm on December 26, 2022, which assigned it claim number 43-43L8-94R (the "2022 claim").  *Id*.; Doc. No. 31-1 at 72.  On December 28, 2022, State Farm authorized payment to Plaintiffs for water mitigation, plumbing repairs, and temporary residence at a hotel until their property's water could be restored.  *Id*.

On December 30, 2022, Mr. Schnatzmeyer reported to State Farm that their water mitigation company found moisture in flooring which had previously been affected by water in the 2021 claim.  *Id*. at 17.  In this conversation, Mr. Schnatzmeyer reported that the Plaintiffs had not completed the repairs to overlaid laminate flooring paid for by State Farm as part of the 2021 claim.  *Id.*  Mr. Schnatzmeyer also indicated to State Farm that, because of this loss, the Plaintiffs would now need to replace their property's entire underlaying ceramic floor.  *Id*. at 70.  Given the complex interplay between 2021 and 2022 claims, State Farm's adjuster "informed [Mr. Schnatzmeyer] to have his [contractor] provide [an] estimate separating the removal and replacement

3

cost [for the flooring] for review and handling separate. All other items would be handled under the [2022] claim." *Id*.

On January 19, 2023, two State Farm adjusters met with the Plaintiffs to inspect the damage to their property. Doc. No. 31-1 at 65. According to State Farm's claims file, the Plaintiffs reportedly "wanted all ceramic tile pulled up and out so they can put a new floor down." *Id*. The adjusters reportedly "explained to the [Plaintiffs] ceramic tile does not appear damaged, no cracks, no shifting, no popping like they are saying; it did not feel wet." *Id*. The Plaintiffs reportedly "kept saying [the mitigation company] said it all needed to be taken out" but State Farm's records note the mitigation company "has not sent an estimate / a mitigation estimate / no moisture readings / no documentation." *Id*. Thus, State Farm's adjusters "explained to [the Plaintiffs] multiple times that [it] does not appear ceramic tile is damaged, and things have to be damaged to warrant repair/replace." *Id*.

That same day State Farm sent the Plaintiffs a reservation of rights letter, noting unresolved coverage questions, and pointing to questions relating to the Plaintiffs' compliance with policy conditions in their "Duties After Loss." Doc. No. 31-1 at 74-81. On January 21, 2023, State Farm wrote the Plaintiffs to inform them they were still awaiting invoices from the Plaintiffs' plumber and mitigation company, but, thus far, the Plaintiffs' damages did not exceed their deductible. *Id*. at 83.

On January 26, 2023, Mr. Schnatzmeyer contacted State Farm to request the replacement of the Plaintiffs' ceramic tile floor under the 2022 claim. Doc. No. 31-1 at 60. State Farm's claims file indicates the adjuster "advised [Mr. Schnatzmeyer] that

4

it would take a long period of time for water to damage tile and compromise its foundation and it would not be a sudden event from December 24, 2022." *Id*. State Farm's records indicate Mr. Schnatzmeyer reportedly agreed, and stated he would instead seek coverage for the tile floor under the Plaintiffs' 2021 claim. *Id*.

On January 27, 2023, State Farm's adjuster called Mr. Schnatzmeyer to confirm the Plaintiffs' plumbing had been repaired and their property's water restored. *Id*. As the water had been restored at Plaintiffs' property, State Farm's adjuster informed Mr. Schnatzmeyer State Farm would not cover any further temporary hotel expenses after January 30, 2023. *Id*. at 60. Mr. Schnatzmeyer reportedly objected, asserting that State Farm needed to remove and replace the ceramic tile flooring before the Plaintiffs returned to the property. *Id*. Mr. Schnatzmeyer reportedly "kept saying the tile mortar bed was broken down and ruined from the first loss, and they should have repaired/replaced it back then." *Id*. State Farm's adjuster explained State Farm would be denying coverage for the ceramic tile under the 2022 claim. *Id*. Mr. Schnatzmeyer indicated "he agreed the damage and the reason they want new ceramic time was from the first claim." *Id*.

On January 30, 2023, State Farm provided the Plaintiffs an estimate for the 2022 claim, which, still pending receipt of their invoices for water mitigation and plumbing repairs, was less than the Plaintiffs' deductible. *Id*. On February 8, 2023, State Farm sent the Plaintiffs a partial denial letter on the 2022 claim, informing the Plaintiffs that their ceramic tile would not be replaced as "no accidental direct physical

5

loss was found to the ceramic tile flooring located on the main floor from this water loss." Doc. No. 31-1 at 100.

That same day, State Farm's adjuster called Mr. Schnatzmeyer to discuss the partial denial and to remind Mr. Schnatzmeyer to submit the "additional docs he was going to send" because "nothing had been received." *Id*. at 57. Mr. Schnatzmeyer reportedly informed the adjuster he was "no longer speaking with State Farm because they have hired a public adjuster to get the ceramic tile flooring paid for." *Id*.

On February 16, 2023, the Plaintiffs' public adjuster sent State Farm an estimate of $58,150.83 for the Plaintiffs' loss for related to the 2021 claim, a substantial part of which was the Plaintiff's public adjuster's estimate of the cost to remove and replace the Plaintiffs' ceramic tile flooring. *Id*. at 136-60.

State Farm responded to the Plaintiffs with a written letter on May 15, 2023, which stated "after reviewing the information you submitted as well as a review of our claim file, we believe our evaluation of the claim was accurate based on terms and conditions of the policy. Therefore, no addition[al] payment will be made." *Id*. at 162. Importantly, State Farm "indicated there was no accidental direct physical loss from water to the ceramic tile [as] currently claimed." *Id*. at 164. Further, State Farm asserted the Plaintiffs failed to comply with their duties after loss by failing to complete water mitigation and necessary repairs, and further noting that the Plaintiffs' replacement cost benefits had already expired. *Id*. at 162-163.

On August 7, 2023, State Farm received a letter from the Plaintiffs' attorney relating to the 2021 claim, which, in addition to previous demands for ceramic tile,

6

now sought coverage for personal property and additional living expenses from the 2021 claim. Doc. No. 31-1 at 5, ¶13. State Farm stood on its prior coverage decision. *Id.*

On August 25, 2023, State Farm received a second letter from the Plaintiffs' attorney addressing the 2022 claim, which included a sworn statement of loss and the public adjuster's estimate. *Id*. at 8, ¶25. On September 29, 2023, State Farm re-inspected the property for the 2022 claim alongside the Plaintiffs' public adjuster. *Id*. at 47. State Farm's adjuster noted it appeared the "public adjuster's main concern was the tile floor." *Id.* The adjuster further reported that the "public adjuster stated that the contractor told the Plaintiffs there was water underneath the tile and that water damaged the tile and made them sound hollow." *Id*. The public adjuster reportedly stated that the Plaintiffs "did not hire a water mitigation company to come back and deal with any possible moisture to the tile, but that the contractor checked and told [the Plaintiffs] it was wet." *Id*. The State Farm adjuster noted that the public adjuster then "showed me a part of the tile floor in the living room that was not affected or touched by the water and I started to knock on tiles, and some were hollow as well." *Id*. Thus, State Farm's adjuster observed that the "hollow tiles do not appear to have anything to do with the water leak" and "inspection revealed no damage to tile flooring from [the] water leak." *Id*. State Farm's adjuster then concluded "I did not see any issues with water to the tile floor" and "tiles may become hollow because they have de-bonded or have never bonded." *Id*. Following the inspection, State Farm did add several items (including the mitigation and plumbing invoices) to its prior estimate and

issued a payment to Plaintiffs for $4,383.79 to settle the 2022 claim. Doc. No. 31-1 at 117-34; *Id*. at 47.

On November 3, 2023, the Plaintiffs filed the present suit. Doc. No. 1-3 at 10.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted when the record shows there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v Catrett*, 477 U.S. 317, 323-25 (1986) (citing FED. R. CIV. P. 56(a)). A dispute regarding a material fact is "genuine… if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once a moving party has made an initial showing that there is no evidence to support the non-moving party's case, the party opposing the motion must come forward with competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant "must support an assertion that there is a genuine dispute of material fact by citing to particular parts of material in the record or showing that the materials cited do not establish the absence or presence of a genuine dispute." *Johnson v. Cooper T. Smith Stevedoring Co., Inc.*, 74 F.4th 268, 275 (5th Cir. 2023)(citing FED. R. CIV. P. 56(c)). To defeat summary judgment, a non-movant must establish the presence of a genuine material factual dispute by showing there is an actual factual controversy, based on something more than a scintilla of evidence, and not simply metaphysical doubt as to the material facts, conclusory allegations, or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37

8

F.3d 1069, 1075 (5th Cir. 1994). Since a non-movant must cite to particular parts of materials in the record pursuant to Rule 56(c)(1)(a), and a district court has no duty to "sift through the record," evidence that exists in the summary judgment record which the non-movant "fails to even refer to in their response to the motion for summary judgment… is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)(internal quotations omitted).

## III.  ANALYSIS

The Plaintiffs assert State Farm breached its contract by wrongfully denying or underpaying each of the Plaintiffs' 2021 and 2022 claims, and by so doing, State Farm breached its duty of good faith and fair dealing, knowingly violated the Texas Insurance Code and the Prompt Payment of Claims Act, made misrepresentations, committed fraud and engaged in a conspiracy to further its alleged fraud.  Doc. No. 1-3 at 11-23, ¶¶5.1-11.1.  State Farm moves for partial summary judgment on nearly all of the Plaintiffs' contractual and extracontractual claims, asserting that the Plaintiffs fail to establish a genuine dispute of material fact for each of the following causes of action, which the Court will discuss below.

### A. The Plaintiffs failed to bring suit on their 2021 claim within the Policy's limitations period, thus the causes of action relating to their 2021 claim are barred as a matter of law.

The Plaintiffs' 2021 claim is barred because they failed to file suit within the Policy's contractual limitations period.  The Plaintiffs' Policy required that the Plaintiffs bring any suit or action against State Farm "within two years and one day after the cause of action accrues."  Doc. No. 31-1 at 214, ¶6.  In Texas, parties may

contract to a shorter period than the four-year statute of limitations for breach of contract if the agreed-upon limitation period is not shorter than two years. TEX. CIV. PRAC. & REM. CODE. § 16.070(a).  Accordingly, in Texas, contractual limitations in insurance policies are regularly upheld and courts routinely dismiss time-barred first-party claims.  *See Watson v. Allstate Tex. Lloyds*, 224 F. App'x. 335, 339 (5th Cir. 2007) (collecting cases).  An insurance contract's valid contractual limitation period also governs prompt payment claims brought under Chapter 542.  *See Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 573 (W.D. Tex. 2019) (collecting cases). Separately, an action alleging statutory violations of Chapter 541 must be brought within two years of the act giving rise to the action. TEX. INS. CODE § 541.162(a). Finally, common law "claims for breach of the duty of good faith and fair dealing must be brought within two years of the date on which the cause of action accrued." *Silo Rest.,* 420 F. Supp. 3d at 573 (quoting *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d, 211, 221 (Tex. 2003)); *accord Castillo v. State Farm Lloyds*, 210 F. App'x. 390, 395 (5th Cir. 2006)(two years limitations for common law and statutory claims).

A policyholders' contractual and extracontractual causes of action will accrue against its insurer, and its limitations begins to run, when the insurer either wholly or partially denies the policyholder's claim.  *See Castillo,* 210 F. App'x. at 393-95.  Unless an insurer later reverses its denial, the date the claim is denied is the date the policyholder's cause of action accrues. *See Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 315-16 (5th Cir. 2019).  An insurer re-examining its claim or considering new information will not re-set the accrual date unless the insurer changes its decision.

10

*Id; Hames v. Safeco Ins. Co. of In.*, Civ. Act. No. 4:20-cv-01167-P, 2021 WL 5936907 at

*2 (N.D. Tex. Aug 6, 2021)(Pittman, J.) (citing *Castillo*, 210 F. App'x. at 393-395).

Here, State Farm issued payment to the Plaintiffs "of $4,261.52 in settlement of your Dwelling claim" on March 12, 2021. Doc. No. 31-1 at 42. Twenty-three months later, the Plaintiffs' public adjuster sent a demand letter to State Farm asserting further damages from the 2021 claim. *Id*. at 136-60. In response, State Farm re-evaluated its claim file and then, on May 15, 2023, informed the Plaintiffs that it stood on its prior claims determination and no additional payment would be made. *Id*. at 162-64. Three months later, the Plaintiffs' attorney sent a further demand letter relating to the Plaintiffs' 2021 claim. Doc. No. 31-1 at 5, ¶13. State Farm again stood on its March 12, 2021, claims determination. *Id*. Since State Farm never changed its initial determination of the 2021 claim, the Plaintiffs' causes of action accrued and the Plaintiffs' limitations period began to run on March 12, 2021, the date that State Farm determined the 2021 claim. *See Smith*, 932 F.3d at 315-16.

Therefore, the Plaintiffs' time to file suit against State Farm on their 2021 claim ran on March 12, 2023 for its alleged common law bad faith and statutory insurance code violations, and on March 13, 2023, for its alleged breach of contract and violation of the Prompt Payment Act. *See Castillo,* 210 F. App'x. at 395. The Plaintiffs did not file this suit until November 3, 2023. Doc. No. 1-3 at 10. Therefore, the Plaintiffs' causes of action against State Farm relating to their 2021 claim are untimely and barred as a matter of law.

Accordingly, State Farm is entitled to summary judgment for State Farm on all the causes of action the Plaintiffs have asserted relating to their 2021 claim.

### B. The Plaintiffs fail to establish a genuine material factual dispute on their causes of action relating to Coverage A benefits unpaid for their 2022 claim.

State Farm asserts that there is no genuine material factual dispute relating to the Plaintiffs' claim that State Farm failed to pay losses covered under Coverage A resulting from the Plaintiffs' 2022 claim. Doc. No. 30 at 27, ¶49. State Farm asserts that the Plaintiffs have "no competent evidence to establish the covered damages under Coverage A from the 2022 claim exceeded the State Farm estimate or that additional Policy benefits under Coverage A were owed." *Id.* State Farm specifically asserts there is no evidence of losses relating to the 2022 claim, because the Plaintiffs' expert failed to segregate its estimate of the loss amount between the 2021 claim and the 2022 claim. *Id.* at 27-28, ¶¶49-50. State Farm argues that the Plaintiffs' failure to cite evidence which segregates the quantum of loss from each claim bars both as a matter of law. *Id.*

In their Response, the Plaintiffs attempt to establish a genuine dispute of material fact relating to their 2022 claim by citing to, and attempting to explain, several passages of their expert's report and deposition testimony. Doc. No. 44-1 at 20-22. After careful review of the evidence in the record, the Court concludes that it need not determine whether Plaintiffs have met their segregation burden as a matter of law, because the expert evidence Plaintiffs cite shows that their expert's estimate of covered loss under Coverage A for their 2022 claim is *less* than the comparable estimate by State

12

Farm. Therefore, there is no evidence in the summary judgment record by which the Plaintiffs can establish a genuine dispute of material fact that State Farm under-estimated their Coverage A benefits on their 2022 claim.

In making this finding, the Court carefully analyzed the Plaintiffs' expert's written report and deposition testimony, which the Plaintiffs cited in their Response. Specifically, in their Response, the Plaintiffs cite their expert's report, which indicates that, when combined, the Plaintiffs' loss from the 2022 claim and 2021 claim represented $67,492.78 in loss on a replacement cost value basis (and $62,439.19 on an actual cost value basis). Doc. No. 44-1 at 21. Since the expert's conclusion combined these estimates, State Farm raised a segregation challenge. In attempting to address this segregation challenge, the Plaintiffs ask the Court to interpret their expert's report as attributing all the Plaintiffs' losses to the 2022 claim. *Id*. at 22. Specifically, the Plaintiffs argue that "the estimate [of loss] for the second claim would be just as high as the first one" because the Plaintiffs had not yet made repairs after the 2021 claim. *Id*.

The Plaintiffs' speculation about what their expert's estimate "would be" in some other configuration is not a persuasive argument, nor competent evidence. Even more critically, the Plaintiffs' argument plainly *contradicts* what their expert directly opined in his written report. In that report, the Plaintiffs' expert concluded that "it is my professional opinion, after reviewing all the provided documentation, the majority of the damage occurred as a result of the 2/17/2021 loss event and that [the] 12/24/2022

13

loss event had *a minimal contribution* to the totality of the water damage the property

incurred." Doc. No. 44-1 at 22. (emphasis added).

The passage from their expert's deposition the Plaintiffs rely on, when read in

its full context, also contradicts the Plaintiffs' proposition that the full value of their

losses should be attributed to the 2022 claim. Rather, the Plaintiffs' expert's testimony

read in conjunction with his written report, establishes that the expert's estimate of the

Plaintiffs' repair costs arising from their 2022 claim was *less* than the State Farm's

comparable estimate.

The passage cited by Plaintiffs from their expert's deposition follows in full:

Q. Under the heading in your report for Repair Scope, it does state you've
attached an estimate for reasonable and necessary costs for repairing the areas
of the property that were damaged by the 2021 and 2022 pipe burst events.
Does your estimate distinguish at all between what repairs are needed for one
loss event versus what repairs are needed for the second loss event or have you
combined what repairs are needed for both loss events together?

A. Great question. The answer is actually yes to both. The estimate is one
estimate for all repairs that are necessary for both claims. However, the two
claims are separated on the estimate in different areas. **The only damage that
is additional from the second claim is that front bathroom area**; otherwise,
the water affected already mitigated [and] unrepaired areas. **So there was no
new damage in the rest of the home from the second claim**. **It's just that
area of the front bathroom that is new and untouched from the prior
claim**. The first claim wiped everything else out and because repairs were still
ongoing, there's no new physical damage to report in those other areas. If he had
already completed the repairs, then the estimate for the second claim would be
just as high as the first claim. It would be a whole other redo. So State Farm
actually is going to pay less because he hadn't completed repairs.

Doc. No. 44-3 at 164-165, 42:24-43:10. (emphasis added). The expert testified that

his report did in fact provide a basis to segregate its estimate of damage between the

two claims, and that beyond the "additional damage" to the "area of the front

14

bathroom that is new," there "was no new damage in the rest of the home from the second claim." *Id*. The expert's testimony that new damage from the 2022 claim was limited to the front bathroom is consistent with his written opinion which stated the 2022 claim "had a minimal contribution" to the total loss. Doc. No. 44-1 at 22.

Since the expert's evidence was that the only new damage from the 2022 claim was to the front bathroom, the Court examined the record to identify the cost of repair to the front bathroom and the amount State Farm included for that expense in its final estimate and loss payment. *See e.g.,* Doc. No. 44-3 at 15-16 (Plaintiffs' expert estimate of $2,284.66); Doc. No. 31-1 at 117-22, 129 (State Farm's estimate $3,575.35). After careful review, the Court finds Plaintiffs' own summary judgment evidence shows that their own estimate of their 2022 Coverage A loss was *less* than State Farm's estimate.

Because the Plaintiffs' own evidence shows that their loss was an amount *less* than the amount estimated and paid by State Farm, the Court concludes a reasonable jury could not find State Farm underpaid the Plaintiffs' Coverage A benefits for their 2022 claim. Accordingly, State Farm is entitled to summary judgment on Plaintiffs' causes of action relating to Coverage A benefits for their 2022 claim.

**C. The Plaintiffs did not provide State Farm an inventory of personal property losses as required under their Policy before filing suit, and thus, their 2022 claim for Coverage B is barred as a matter of law.**

State Farm moves for summary judgment on the Plaintiffs' 2022 claims for personal property losses brought under Coverage B on the basis that the Plaintiffs failed to provide State Farm an inventory of their personal property losses as required under

the Policy before initiating suit, and, thus, their claims for personal property losses are barred as a matter of law.

Under the Policy's "Duties After Loss," the Plaintiffs were required to "cooperate" in "the investigation of the claim" and "prepare an inventory of damaged or stolen personal property: (1) showing in detail the quantity, description, age, replacement cost and amount of loss; (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory." Doc. No. 31-1 at 203. Under "Suit Against Us", the Policy states "no action will be brought against [State Farm] unless there has been compliance with policy provisions." *Id.* at 214, ¶6. Thus, the Policy expressly bars suit by policyholders unless they provide State Farm with a personal property loss inventory prior to filing suit. Federal courts in Texas routinely dismiss policyholders' first-party claims where they failed to comply with similar loss inventory provisions. *See, e.g., Ansah v. Nationwide Prop. & Cas. Ins. Co.,* 2024 WL 3929895 at *3-4 (S.D. Tex. Aug. 23, 2024); *Harding v. State Farm Lloyds,* 2024 WL 5396267 at *5 (S.D. Tex. May 7, 2024); *In re New York Inn Inc.,* 2023 WL 4163485 at *14 (Bankr. N.D. Tex. June 23, 2023).

Here, the record shows that the Plaintiffs failed to provide State Farm the personal property loss inventory required by their Policy. As an initial point, Mr. Schnatzmeyer testified at his deposition that he *did* prepare an inventory of the personal property loss the Plaintiffs alleged they suffered, and he claimed this was "in the record." Doc. No. 31-1 at 348, 172:18-25 (emphasis added). However, this inventory was not cited in Plaintiffs Response, and, importantly, it was not included in

16

Plaintiffs' Appendix of summary judgment evidence. Accordingly, this inventory is not in the summary judgment record before the Court.

Even so, Mr. Schnatzmeyer testified that he did *not* provide this inventory of damaged personal property to State Farm before filing suit. *Id*. at 173:6-14 (emphasis added). Mr. Schnatzmeyer clarified that while he provided State Farm an inventory of damage to the Plaintiffs' *real* property before filing suit, he did not provide State Farm with an inventory of the Plaintiffs' damaged *personal* property. *Id*. at 348-49, 173:20-174:11 (emphasis added). Mr. Schnatzmeyer explained that he "elected to defer" putting together an inventory of damaged personal property "because it wasn't on the top of [his] priority list." *Id*. Ms. Sandlin's testimony corroborated that Mr. Schnatzmeyer submitted a list of damaged personal property to State Farm only *after* the lawsuit was filed. *Id*. at 353, 35:14-23. Thus the summary judgment evidence shows that the Plaintiffs failed to comply with the Policy's "Duties After Loss" provision which required they "prepare an inventory of damaged or stolen personal property: (1) showing in detail the quantity, description, age, replacement cost and amount of loss; (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory." *Id*. at 203. The Plaintiffs' failure to comply with their duty under the Policy to provide State Farm an inventory of damaged personal property before filing suit inherently prejudiced State Farm because it was prevented from timely adjusting the Plaintiffs' personal property loss.

Because they failed to meet their Policy's conditions precedent to filing suit, the Plaintiffs' causes of action related to their personal property losses covered under

17

Coverage B from their 2022 claim are barred as a matter of law. *See Ansah*, 2024 WL 3929895 at *3-4; *Harding*, 2024 WL 5396267 at *5; *In re New York Inn Inc.,* 2023 WL 4163485 at *14. Accordingly, State Farm is entitled to summary judgment on Plaintiffs' causes of action relating to Coverage B benefits from their 2022 claim.

### D. The Plaintiffs fail to establish their common law and statutory bad faith claims present a genuine dispute of material fact.

State Farm moves for summary judgment on the Plaintiffs' common law and statutory bad faith claims, asserting that there is no evidence to establish a genuine dispute that State Farm acted in bad faith when adjusting the Plaintiffs' claims. In their Response, the Plaintiffs re-iterate their argument that State Farm "failed to conduct a thorough and fair investigation," "fail[ed] to fully inform the Plaintiffs of their rights under the policy" and "underpa[id] their damages." *See* Doc. No. 44-1 at 25-28. The Plaintiffs' Response is insufficient to establish their allegations of bad faith are in fact a genuine material factual dispute, for several reasons.

Given the Court's rulings on all the causes of action related to Plaintiffs' 2021 claim and substantial parts of the Plaintiffs' 2022 claim (e.g., Coverage A and Coverage B), these causes of action may no longer be used as the required breach of contract predicate for Plaintiffs' bad faith claims. *See Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005).

In addition, since the Plaintiffs fail to cite to "particular parts" of the record to establish a genuine material factual dispute relating to their bad faith claims, the Plaintiffs' response fails to properly rebut State Farm's motion for summary judgment

on these bad faith claims. *See* FED. R. CIV. P. 56(c)(1). In particular, the Plaintiffs fail to cite any evidence that State Farm did not conduct a reasonable investigation or denied or delayed payment of any of the Plaintiffs' claims for coverage when State Farm's liability was reasonably clear. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 56 (Tex. 1997); *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). Further, the Plaintiffs fail to cite any evidence that State Farm "knew its actions were false, deceptive, or unfair," as they must do, to be entitled to an extra-contractual award. *See Minn. Life Ins. Co. v. Vasqez,* 192, S.W.3d 774, 775 (Tex. 2006). Finally, the Plaintiffs cite no evidence that could establish they suffered any injury independent of their policy claims. *See Menchaca v. State Farm Lloyds,* 545 S.W.3d 796, 813 (Tex. 2018). At most, the Plaintiffs' complaints amount to a "bona fide coverage dispute," which, as a matter of law, is insufficient to establish bad faith. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

The Plaintiffs' evidence fails to establish genuine dispute of material fact as to all their claims for common law and statutory bad faith. *See Robinson v. State Farm Fire & Cas. Co.,* 13 F.3d 160, 162 (5th Cir. 1994). Accordingly, State Farm is entitled to summary judgment on Plaintiffs' common law and statutory bad faith claims.

### E. The Plaintiffs fail to establish there is a genuine dispute of material fact for their misrepresentation, fraud, and conspiracy claims.

State Farm moves for summary judgment on the Plaintiffs' misrepresentation, fraud, and conspiracy claims, asserting that the Plaintiffs fail to cite any evidence to establish a genuine material factual dispute.

19

In their Response, the Plaintiffs fail to identify and address the specific elements of misrepresentation, fraud or conspiracy, and simply offer a conclusory argument that State Farm "made material misrepresentations regarding the extent of coverage and the necessity of certain repairs, which Plaintiffs relied upon to their detriment."  Doc. No. 44-1 at 31-32.  The Plaintiffs' conclusory allegations of misrepresentation, fraud and conspiracy, now facing the higher bar of summary judgment, are not supported by any citation to the summary judgment evidence in the record. Thus, the Plaintiffs fail to meet their burden to establish a genuine dispute of material fact to avoid summary judgment on these claims.  *See* FED. R. CIV. P. 56(c)(1); *Little*, 37 F.3d at 1075.

Moreover, as with the bad faith claims, the Court's rulings on the Plaintiff's breach of contract causes of action for the entire 2021 claim and coverages A and B on for the 2022 claim, precludes the Plaintiffs from relying on these alleged breaches as foundational elements of their claims of misrepresentation, fraud, or conspiracy.

Finally, the Plaintiffs' claims for fraud and misrepresentation and the derivative claim for conspiracy also fail as a matter of law.  An insurers' "post-loss communications cannot serve as a basis for misrepresentation claims under common law fraud, the Texas Deceptive Trade Practices Act, or the Texas Insurance Code" and Plaintiffs submit no *pre-loss* communications by State Farm which might be a valid basis for their claims. *See Gooden v. State Farm Lloyds*, Civ. Action No. 4:20-CV-00698-O, 2021 WL 7906860, at *3 (N.D. Tex. May 11, 2021)(O'Connor, J.).

For these reasons, State Farm is entitled to summary judgment on these claims.

20

### F. Plaintiffs' Prompt Payment Act Claims related to their 2021 claim and some of their 2022 claim (e.g., Coverages A & B) are barred.

State Farm moves for summary judgment on the Plaintiffs' Prompt Payment Act Claims alleging the Plaintiffs failed to establish a genuine material factual dispute. As a matter of law, Prompt Payment Act penalties "do not apply in a case in which it is found as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer." *See Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 824 (Tex. 2019)(citing TEX. INS. CODE § 542.058(b)). Thus, since the Court has granted summary judgment on the Plaintiffs' breach of contract causes of action arising from their 2021 claim and Coverages A and B from their 2022 claim, those breach of contract claims, can no longer serve as a predicate for any Prompt Payment Act claims.

However, State Farm did not move for summary judgment on the Plaintiffs' claims for benefits for additional living expenses under Coverage C relating to their 2022 claim. Thus, the Plaintiffs are not barred from pursuing any valid Prompt Payment Act claim which may relate to this unresolved breach of contract claim.

Accordingly, State Farm is entitled to summary judgment on the Plaintiff's Prompt Payment Act claims related to Plaintiffs' 2021 claim and their 2022 claim for Coverages A and B because the Court finds there is no predicate breach of contract. State Farm's request for summary judgment on Prompt Payment Act claims related to Coverage C for the 2022 claim is DENIED as that claim has not yet been determined.

21

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendant State Farm Lloyds' Motion for Partial Summary Judgment. The Court grants summary judgment against Plaintiffs Mark Schnatzmeyer and Carol Sandlin's on all causes of action relating to their (i) 2021 claims; (ii) Coverage A benefits on their 2022 claim; (iii) Coverage B benefits on their 2022 claim; (iv) statutory and common law bad faith claims; (v) misrepresentation, fraud, and conspiracy claims; (vi) and Prompt Payment Act claims which relate to either the Plaintiffs' 2021 claim or their claim for benefits under Coverage A or B on their 2022 claim. The Court denies summary judgment on Prompt Payment Act claims which relate to the Plaintiffs' claim for benefits under Coverage C on their 2022 claim.

**SO ORDERED.**

Signed June 17th, 2025.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

22